UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| JOSE RAUL GONZALEZ MOJICA, | * * * | |
| Plaintiff, | * * | |
| v. | * * | Civil Action No. 25-cv-13783-ADB |
| TODD LYONS et al., | * * * | |
| Defendants. | * * * * | |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

Before the Court is Petitioner Jose Raul Gonzalez Mojica's petition for writ of habeas corpus. For the following reasons, the petition is **GRANTED**.

I.   BACKGROUND

   A.   Factual Background

The parties do not dispute the underlying facts. See [ECF No. 11 ("Resp.") at 1]. Petitioner, a citizen of Nicaragua, entered the United States without inspection in 2022 after being attacked and threatened by the Nicaraguan military. [ECF No. 1 ("Pet.") ¶¶ 17–18]. He was detained by U.S. Immigration and Customs Enforcement ("ICE") in February 2025, [id. ¶ 19], and received a bond hearing on May 19, 2025, [id. ¶ 20]. At that hearing, he was released on bond in the amount of $10,000, subject to the following conditions:

> [Petitioner] is hereby warned of his obligation to file Form EOIR-33 whenever he changes his address during the pendency of this proceeding. [Petitioner] is also warned of his obligation to attend the hearings at the time and place designated by

> the immigration court.  [Petitioner]'s failure to attend any hearing scheduled by the immigration court may result in a removal order entered in his absence.
> Finally, [Petitioner] must refrain [from] ANY alcohol consumption and [Petitioner] must learn and comply with the laws of the United States and the state of his residence.

[ECF No. 2-1 at 2].  Fifteen days later, "ICE enrolled Petitioner in its Intensive Supervision Appearance Program ('ISAP')," [Resp. at 2], which requires Petitioner to wear a GPS monitor, submit to regular home and office visits, and remain in the New England Zone. See [ECF No. 2-3].

### B. Procedural History

On December 9, 2025, Petitioner filed the instant petition, challenging ICE's unilateral decision to place him in ISAP.  [Pet.].  Respondents filed a response on December 31, 2025, [Resp.], and Petitioner filed a reply on January 14, 2026, [ECF No. 14].

## II. DISCUSSION

Petitioner argues that ICE's decision to subject him to additional supervision not required by the immigration judge's bond order conflicts with ICE's own regulations, is unlawful under 8 U.S.C. § 1226(a), and violates his Fifth Amendment procedural and substantive due process rights.  [Pet. ¶¶ 29–51].  Respondents do not address any of these arguments in their response; rather, they argue that Petitioner is not in custody as required by 28 U.S.C. § 2241(c)(3), [Resp. at 2–4], and that he failed to exhaust administrative remedies available to him under 8 C.F.R. § 1236.1(d)(1), [id. at 4–5].

To begin, it is axiomatic that ICE must follow its own regulations.  See United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 265–67 (1954); Manguriu v. Garland, 86 F.4th 491, 501 n.15 (1st Cir. 2023) ("It's true, of course, that the agency must follow its own regulations."). Here, those regulations authorize a designated official to make an "initial custody

2

determination," which includes "setting . . . a bond" and, implicitly, other "conditions under which [the noncitizen] may be released." 8 C.F.R. § 1236.1(d)(1).[1] Thereafter, a noncitizen may request review of that decision by an immigration judge. Id. If ICE is dissatisfied with the immigration judge's decision on bond and custody, it "may appeal the decision of an immigration judge" to the Board of Immigration Appeals ("BIA"). Id. § 1236.1(d)(3)(i). To the knowledge of the Court, there is nothing in the procedural scheme that authorizes ICE to impose additional conditions following the immigration judge's decision. ICE's only recourse following a decision not to its liking is an appeal to the BIA.

Petitioner asserts, and Respondents do not contest, that ICE imposed additional conditions on Petitioner's release that were not set by the immigration judge at Petitioner's bond hearing.[2] In setting these new conditions, it acted outside of the framework established by its own regulations. Thus, Petitioner will prevail on the merits unless Respondent is correct on its jurisdictional arguments. See N-N- v. McShane, No. 25-cv-5494, 2025 WL 3143594, at *3–4 (E.D. Pa. Nov. 10, 2025); Diahn v. Lowe, No. 24-cv-01936, 2026 WL 84576, at *4 (M.D. Pa. Jan. 12, 2026); Da Silva v. LaForge, No. 25-cv-17095, 2026 WL 45165, at *4 (D.N.J. Jan. 7, 2026); cf. Orellana Juarez v. Moniz, 788 F. Supp. 3d 61, 68–69 (D. Mass. 2025) (reaching same

---

[1] A 2003 rule divided regulations related to the former Immigration and Naturalization Service ("INS") between the Department of Homeland Security and the Department of Justice. See Aliens and Nationality; Homeland Security; Reorganization of Regulations, 68 Fed. Reg. 9824, 9824 (Feb. 28, 2003). As part of that division, "certain parts and sections of the regulations that relate[d] to proceedings before both the INS and [the Executive Office for Immigration Review ('EOIR')]" were "duplicate[d] . . . in . . . shared provisions." Id. One such duplicated provision now appears at both 8 C.F.R. § 236.1 and at 8 C.F.R. § 1236.1. Id. at 9838. Respondents cite to 8 C.F.R. § 1236.1, see, e.g., [Resp. at 4], whereas Petitioner cites to 8 C.F.R. § 236.1, see, e.g., [Pet. ¶ 49]. The Court uses Respondents' citation, but notes that the substantive provisions are the same, so the Court would reach same result if it referred instead to § 236.1.

[2] Because Respondents have not challenged this petition on the merits, the Court has not considered or reviewed the substance or propriety of the ISAP.

conclusion in case where conditions of release persisted after immigration case was closed for failure to prosecute).

Respondents first assert that the Court does not have jurisdiction because petitioner is not in custody. [Resp. at 2–4]. Over a decade ago, another session of this court considered the question of whether an order of supervision in the immigration enforcement context satisfies the "custody" requirement of 28 U.S.C. § 2241(c)(3). Ali v. Napolitano, No. 12-cv-11384, 2013 WL 3929788, at *2–5 (D. Mass. July 26, 2013). The court concluded:

> While petitioner is "free" in the sense that he is not behind prison walls, he is subject to control over where and when he can travel, where he can reside, with whom he can associate, what information he may keep confidential, and the type of employment in which he can engage. . . .
> Physical detention is not the only restraint on liberty sufficient to trigger the 'custody' bar required to invoke the writ of habeas corpus. . . . [T]he restraints placed upon petitioner's liberty, restraints not shared by the public generally, are substantially similar to those restraints identified in the criminal context warranting a 'custody' finding. As a result, this Court finds that petitioner was in 'custody' pursuant to 28 U.S.C. § 2241(c)(3).

Id. at 4–5. That case has been cited frequently by other sessions of this court in the intervening years. See López López v. Charles, No. 12-cv-101445, 2020 WL 419598, at *3 (D. Mass. Jan. 26, 2020); Flores Salazar v. Moniz, No. 25-cv-11159, 2025 WL 1703516, at *5 (D. Mass. June 11, 2025); Orellana Juarez, 788 F. Supp. 3d at 68.

Respondents resist this conclusion, relying on cases in which sessions of this court have treated GPS monitoring as an "alternative condition[] of release," Lemonious v. Streeter, No. 19-cv-30038, 2020 WL 3713032, at *2 (D. Mass. Feb. 14, 2020), distinct from physical detention, see Castaneda v. Souza, 952 F. Supp. 2d. 307, 309 n.2 (D. Mass. 2013). Those cases, however, did not consider the meaning of custody under 28 U.S.C. § 2241(c)(3), and the Court does not read them to contradict the conclusion that a person subject to GPS monitoring and other conditions of release is in custody for purposes of invoking the writ of habeas corpus.

4

Accordingly, adopting the reasoning of the court in Ali, the Court concludes that Petitioner is in custody for purposes of 28 U.S.C. § 2241(c)(3).

Respondents next argue that Petitioner has failed to exhaust the administrative remedies provided by 8 C.F.R. § 1236.1(d)(1) and (d)(2), which is a necessary precursor to his habeas petition. [Resp. at 4–5]. The Court disagrees. Those subsections govern immigration judge review of "initial custody determination[s]." 8 C.F.R. § 1236.1(d)(1)–(2). The conditions at issue here, by contrast, were allegedly imposed after Petitioner received an initial custody determination by ICE and then a redetermination by an immigration judge. See [Pet. ¶¶ 1–2]. Such additional conditions—imposed unilaterally by ICE after an immigration judge has reviewed ICE's initial custody determination—are not contemplated within the regulatory framework of 8 C.F.R. § 1236.1(c)(8) and (d)(1). Because the regulatory framework does not address a situation where additional conditions are imposed by ICE beyond those imposed by the immigration judge, it does not provide a path for administrative recourse or appeal of such conditions. Thus, because it is not clear what exhaustion would entail, the Court will not require further efforts to exhaust in this case or find that a failure to exhaust precludes a ruling on the merits of the petition. See N-N-, 2025 WL 3143594, at *3–4.

Given the result dictated by the agency's own regulations, the Court does not reach Petitioner's statutory and constitutional arguments.

5

### III.     CONCLUSION

For the foregoing reasons, the Petition is **GRANTED**.  Respondents are **ORDERED** to release Petitioner from all forms of supervision not authorized by the immigration judge's bond decision, [ECF No. 2-1 at 2].

**SO ORDERED.**

February 2, 2026                                             */s/ Allison D. Burroughs*
                                                                          ALLISON D. BURROUGHS
                                                                          U.S. DISTRICT JUDGE